UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SARAH K. STINE                                  )
(Social Security No. XXX-XX-0133),              )
                                                )
                    Plaintiff,                  )
                                                )
        vs.                                     )        4:10-cv-102-RLY-DML
                                                )
MICHAEL J. ASTRUE,                              )
COMMISSIONER OF THE SOCIAL                      )
SECURITY ADMINISTRATION,                        )
                                                )
                    Defendant.                  )

**ENTRY ON JUDICIAL REVIEW**

**I.  Background**

        Plaintiff, Sarah K. Stine, seeks judicial review of the final decision of the agency,

which found her not disabled and, therefore, not entitled to Disability Insurance Benefits

("DIB") or Supplemental Security Income ("SSI") under the Social Security Act ("the

Act").  42 U.S.C. §§ 416(i), 423(d), 1381; 20 C.F.R. § 404.1520(f).  This court has

jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

        Plaintiff applied for DIB and SSI on September 13, 2006, alleging disability since

January 1, 2002.  (R. 101-09).  The agency denied Plaintiff's applications both initially

and on reconsideration.  (R. 83-90, 92-97).  Plaintiff appeared and testified at a hearing

before an Administrative Law Judge ("ALJ") on August 12, 2008.  (R. 35-78).  Plaintiff

was represented by an attorney; also testifying was a vocational expert ("VE"). (R. 35).

On September 10, 2008, the ALJ issued her opinion finding that Plaintiff was not disabled

because she retained the residual functional capacity ("RFC") to perform a significant

number of jobs in the economy. (R. 11-21). After Plaintiff filed a request for review, the

Appeals Council denied Plaintiff's request, leaving the ALJ's decision as the final

decision of the Commissioner. (R. 1-5). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff

then filed a Complaint on September 8, 2010, seeking judicial review of the ALJ's

decision.

Plaintiff was 34 years old at the time of the ALJ's decision and had a high school

education. (R. 19). Her past relevant work experience included work as a retail clerk,

cashier and stocker for a grocery store, and in-home senior care service provider (all of

which are medium to heavy work). (R. 19).

## II. Legal Standards

An ALJ's findings are conclusive if they are supported by substantial evidence. 42

U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971); see also *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th

Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to

weigh the evidence, resolve material conflicts, make independent findings of fact, and

decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court

may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that

of the Commissioner.  *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus,

even if reasonable minds could disagree about whether or not an individual was

"disabled," the court must still affirm the ALJ's decision denying benefits.  *Schmidt v.

Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

In order to qualify for disability benefits under the Act, Plaintiff must establish that

she suffers from a "disability" as defined by the Act.  "Disability" is defined as the

"inability to engage in any substantial gainful activity by reason of a medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential

five-step test the ALJ is to perform in order to determine whether a claimant is disabled.

*See* 20 C.F.R. § 404.1520.  The ALJ must consider whether the claimant:  (1) is presently

employed; (2) has a severe impairment or combination of impairments; (3) has an

impairment that meets or equals an impairment listed in the regulations as being so severe

as to preclude substantial gainful activity; (4) is unable to perform her past relevant work;

and (5) is unable to perform any other work existing in significant numbers in the national

economy.  *Id.*  The burden of proof is on Plaintiff during steps one through four, and only

after Plaintiff has reached step five does the burden shift to the Commissioner to provide

evidence of jobs existing in significant numbers that the claimant can perform, given her

age, education, work experience, and residual functional capacity.  20 C.F.R. §

404.1520(a)(4)(v); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III. The ALJ's Decision

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date; Plaintiff was also insured for DIB through December 31, 2009. (R. 13). The ALJ continued by finding that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three impairments that are classified as severe: (1) degenerative disc disease; (2) osteoarthritis of the knee; and (3) morbid obesity. (R. 13). The ALJ concluded that none of these impairments met or substantially equaled any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). The ALJ determined that Plaintiff's complaints were not fully credible. (R. 16-18). The ALJ then found that Plaintiff retained the RFC for light work except she could: sit/stand/walk for six hours each in an eight-hour workday; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, or crawl. (R. 16). The ALJ determined that, based on this RFC, Plaintiff could not perform her past work. (R. 19). However, Plaintiff could perform a significant number of jobs in the regional economy including elderly companion (600 jobs), cashier (4,100 jobs), and survey worker (500 jobs). (R. 20). The ALJ, therefore, concluded that Plaintiff was not under a disability. (R. 20).

## IV. Discussion

Plaintiff has raised four issues.

1. Whether Plaintiff's knee impairment met Listing 1.02.

2. Whether Plaintiff's back impairment met Listing 1.04.

3. Whether the ALJ failed to consider Plaintiff's obesity.

4. Whether the ALJ properly evaluated the VE's testimony.

**Issue 1: Whether Plaintiff's knee impairment met Listing 1.02.**

Plaintiff's first argument is that the ALJ did not apply Listing 1.02 properly.

Listing 1.02 deals with major dysfunction of a joint. Because we are only concerned with

Plaintiff's lower extremities in this case, only Listing 1.02A is pertinent to the court's

analysis. An individual's impairment meets Listing 1.02A if she is able to demonstrate

the following:

> 1.02 *Major dysfunction of a joint(s) (due to any cause):*
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02. The "inability to ambulate

effectively" is defined in Listing 1.00B2b, which explains:

> b. *What We Mean by Inability to Ambulate Effectively*
>
> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

(Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id*. at Listing 1.00B2b. In order for an individual to be disabled under a particular listing, his impairment must meet each distinct element within the listing. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). And, it is important to remember that, at step three, the burden rests on Plaintiff to demonstrate that he meets the listing.

In this instance, the objective medical evidence supports the ALJ's decision that Plaintiff does not meet Listing 1.02A. Plaintiff's knee impairment fails to meet Listing 1.02A in several ways. First, there is substantial evidence in the record that indicates that Plaintiff did not have a diminished range of motion in her knee. Dr. Gardner, in October 2006, found a full range of motion in both of Plaintiff's knees. (R. 191). Plaintiff again had a full range of motion in her knees when Dr. Gardner examined her in January 2007. (R. 202). In May 2008, Dr. Walz found a full range of motion in Plaintiff's right knee.

6

(R. 208).

Additionally, x-rays did not reveal the requisite joint space narrowing or other damage to Plaintiff's knees. In fact, x-rays of Plaintiff's right knee in May 2008 (more than six years after Plaintiff alleges that she became disabled) revealed "surprising maintenance of the joint space." (R. 308). There are no imaging studies that reveal a deformity in Plaintiff's knees that rises to the level of severity required by Listing 1.02A.

Finally, the evidence does not reveal an "inability to ambulate effectively." In May 2007, Dr. Millan found no limp or gait abnormality despite the fact that Plaintiff walked with a cane. (R. 214). Medical records from January and February 2008 reveal that Plaintiff was ambulatory with a steady gait and no use of an assistive device. (R. 259, 268). While there were earlier indications of a mildly or moderately antalgic gait, the ALJ was not obligated to adopt those findings, as there was substantial evidence in the record that indicated that Plaintiff did not have a gait abnormality. Even if the ALJ erred in not finding that Plaintiff had an antalgic gait (as Plaintiff suggests), Plaintiff still cannot demonstrate an inability to ambulate effectively. To meet that definition, Plaintiff must show that she required a hand-held assistive device that limited *both* of her arms. In January 2007, Dr. Gardner opined that Plaintiff did not require an assistive device. (R. 202). Even assuming that Plaintiff did require a cane, she cannot show that one cane interfered with the use of both of her arms.

In summary, Plaintiff fails to demonstrate the requisite severity of limitation of motion, the imaging studies, or the inability to ambulate effectively in order to meet

7

Listing 1.02A, and the ALJ's decision must be affirmed.

**Issue 2:  Whether Plaintiff's back impairment met Listing 1.04.**

We must next analyze Plaintiff's argument that her back impairment met Listing

1.04, which concerns disorders of the spine.  Listing 1.04 provides as follows:

> 1.04  *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
> arthritis, vertebral fracture), resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord.
>
> With:
>
> A.  Evidence of nerve root compression characterized by neuro-
> anatomic distribution of pain, limitation of motion of the spine, motor loss
> (atrophy with associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there is involvement of the
> lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology
> report of tissue biopsy, or by appropriate medically acceptable imaging,
> manifested by severe burning or painful dysesthesia, resulting in the need
> for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication,
> established by findings on appropriate medically acceptable imaging,
> manifested by chronic nonradicular pain and weakness, and resulting in
> inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  It is, again, important to

remember that Plaintiff has the burden of demonstrating that her impairment met each

element of Listing 1.04.

In this case, the court has reviewed the objective medical evidence in the record, and there are no test results which demonstrate that Plaintiff met either Listing 1.04B or C. Consequently, the only possible listing that Plaintiff's impairment could have met was Listing 1.04A. However, that Listing clearly explains that Plaintiff must have sensory or reflex loss accompanied by a positive straight-leg test result. In August 2006, October 2006, January 2007, May 2007, and June 2007, doctors routinely found normal senses and reflexes. (R. 176, 191, 202, 215, 222-23). Therefore, there was substantial evidence to support the ALJ's decision that Plaintiff's back impairment did not meet Listing 1.04, and the ALJ's decision must be affirmed.

**Issue 3: Whether the ALJ failed to consider Plaintiff's obesity.**

Plaintiff next argues that "the ALJ erred in not taking the claimant's obesity into consideration." (Plaintiff's Brief at 7). However, an examination of the ALJ's decision reveals that she found that Plaintiff's obesity was a severe impairment. (R. 13-14). The ALJ went on to determine that the limited range of light work that Plaintiff could perform accounted for her obesity. (R. 16-19). The ALJ reasonably accounted for Plaintiff's obesity, and Plaintiff's assertions are, therefore, unfounded.

**Issue 4: Whether the ALJ properly evaluated the VE's testimony.**

Finally, the Plaintiff makes an argument about the hypothetical questions posed by the ALJ to the VE and Plaintiff concludes that "the claimant clearly does not have the capacity to perform the full range of light work . . . ." (Plaintiff's Brief at 8). The ALJ, however, did not find that Plaintiff retained the RFC for a full range of light work.

9

Instead, the ALJ found that Plaintiff retained an RFC for a very limited range of light work. (R. 16). The first hypothetical question that the ALJ posed to the VE incorporated all of Plaintiff's limitations that the ALJ found were supported by the record, and the VE testified that, even with those limitations, Plaintiff still could perform a substantial number of jobs in the regional economy. (R. 74-75). Based on a review of the objective medical evidence, there are no additional limitations which the ALJ was obligated to include in her hypothetical question to the VE. Consequently, the hypothetical was not improper, and the ALJ was free to adopt the testimony of the VE.

## V. Conclusion

The ALJ's decision is supported by substantial evidence. Plaintiff's impairments did not meet Listing 1.02 or 1.04. The ALJ also reasonably considered Plaintiff's obesity. Finally, the ALJ asked a proper hypothetical question of the VE. The decision of the Commissioner is **AFFIRMED.** Judgment consistent with this Entry shall now issue.

**SO ORDERED** the 29th day of September 2011.

RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic copies to:

Mark Clark Webster
KARL TRUMAN LAW OFFICE
markwebster@trumanlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov